**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 20 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| CRISTIAN MEJIA,<br>    Plaintiff<br><br>vs.<br><br>FIRSTSOURCE ADVANTAGE, LLC,<br>    Defendant. | )<br>)<br>) CIVIL ACTION<br>) FILE NO. 1:09-CV-1051-CAM<br>) **JURY TRIAL**<br>) **DEMANDED**<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Cristian Mejia, by and through counsel, brings this action against Defendant Firstsource Advantage, LLC on the grounds and in the amounts set forth herein.

### I. PRELIMINARY STATEMENT

1. This action arises out of the facts and circumstances surrounding the collection of a disputed debt.

2. Plaintiff, an individual consumer, institutes this action for actual damages, statutory damages, and attorney fees and the costs of this action against the Defendant for violations of the Fair Debt Collection Practices Act (hereinafter FDCPA) 15 U.S.C. § 1692 *et seq.*

## II. PARTIES

3. Plaintiff Cristian Mejia is a natural person and a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

4. Defendant Firstsource Advantage, LLC (hereinafter "Firstsource") is a New York Limited Liability Company in the business of collecting debts in the state of Georgia.

5. Defendant Firstsource may be served by its Registered Agent for Service of Process: C T Corporation System, 111 Eighth Avenue, New York, New York 10011.

6. Defendant Firstsource is engaged in the business of collecting debts in the state of Georgia.

7. Defendant Firstsource is engaged in the collection of debts from consumers using the mail and telephone.

8. Defendant Firstsource regularly attempts to collect consumer debts alleged to be due to another.

9. Defendant Firstsource is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## III. JURISDICTION AND VENUE

10. Jurisdiction is conferred on this Court by 15 U.S.C. §1692k(d) and 28 U.S.C. §1331.

11. Venue in this District is proper in that the Defendant transacts business here and the conduct complained of occurred here.

### IV. STATUTORY STRUCTURE

12. The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692.

13. Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a(3).

14. Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5).

15. Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. 15 U.S.C. § 1692a(6).

16. Any debt collector who fails to comply with the provisions of the FDCPA is liable for any actual damage sustained, statutory damages up to $1,000, attorneys' fees as determined by the Court and costs of this action. 15 U.S.C. § 1692k.

## V. FACTUAL ALLEGATIONS

17. The Defendant has engaged in a campaign of debt collection abuse aimed at the Plaintiff Cristian Mejia.

18. The Defendant was engaged in the collection of a consumer purpose debt originally owed by the Plaintiff to HSBC Bank Nevada, N.A./Best Buy for a consumer purpose credit card (hereinafter "credit card" or "debt"). .

19. Plaintiff opened the credit card account in 2004.

20. Plaintiff's credit card account went into default in 2005.

21. Upon information and belief, HSBC Bank Nevada, N.A. sold the debt to LVNV Funding LLC for collection.

22. Upon information and belief, LVNV Funding LLC then assigned the debt to Defendant Firstsource for collection.

23. On or about October 20, 2008, Defendant Firstsource mailed the Plaintiff an initial communication letter in an attempt to collect the debt.

24. On or about October 27, 2008, Plaintiff received Defendant Firstsource's letter.

25. On or about November 3, 2008, the Plaintiff telephoned Defendant Firstsource regarding their letter.

26. On or about November 3, 2008, the Plaintiff told Defendant Firstsource he was trying to figure out who they were.

27. On or about November 3, 2008, Defendant Firstsource, with the intent to deceive and mislead the Plaintiff, told the Plaintiff: this account is a best buy account we just got in our office on the 17th of last month; the account was however, forwarded here in a pre-legal status meaning at this point in time there could be a possible lawsuit if we can't get a voluntary arrangement from you to resolve it; so basically that's why we try to contact you thru the phone and thru the mail to see what we can do if you are willing to resolve this voluntarily.

28. On or about November 3, 2008, the Plaintiff asked Defendant Firstsource: will I be sued if I don't settle this debt.

29. On or about November 3, 2008, Defendant Firstsource, with the intent to deceive and mislead the Plaintiff, told the Plaintiff: I'm not telling you for sure, they review your file and if they feel that they can collect their money from you, yes they will possibly pursue you.

30. On or about November 3, 2008, the Plaintiff asked Defendant Firstsource: so that means their going to garnish my wages as well?

31. On or about November 3, 2008, Defendant Firstsource, with the intent to deceive and mislead the Plaintiff, told the Plaintiff: there's lots of things that they can do, I've heard of different things happen to different people: wage garnishments, it could be a possible lien, it depends on the person, it has happened to people, what they decide to do we don't do it here, like I said we try to get a voluntary resolution.

32. On or about November 3, 2008, the Plaintiff asked Defendant Firstsource: do you have any documentation proving that I owe the debt or how can I get those documents?

33. On or about November 3, 2008, Defendant Firstsource, with the intent to deceive and mislead the Plaintiff, told the Plaintiff: basically to get the paperwork you're gonna have to tell me that you are disputing the debt, you have to send a letter to my office saying you're disputing the debt and then we forward it back and what happens at that point we only have a certain amount of time to try to work with you to get a resolution; after the time expires here the client on its files will take it for further review if there will be a possible lawsuit.

34. On or about November 3, 2008, Defendant Firstsource, with the intent to deceive and mislead the Plaintiff, told the Plaintiff: my advice is if you know that these charges are yours, if you really do know that they're yours to try

6

and get it resolved but if you know that you didn't make this debt then dispute it because what we are here to do is I can offer you a settlement to save you money on the account, once it's pulled from my office I can't do that anymore.

35. On or about November 3, 2008, the Plaintiff asked Defendant Firstsource how the balance was calculated and when was the interest added on.

36. On or about November 3, 2008, Defendant Firstsource, with the intent to deceive and mislead the Plaintiff, told the Plaintiff: this has been traveling around for quite some time from collection agency to collection agency until it gets to a point where it comes to our office where it turns into pre-legal event; they probably sent you letters in the mail to get you to do a settlement or something like that, after they gave you a final time to try to resolve it before it came here for pre-legal status and you didn't do anything about it, that's when all the fees got tacked on.

37. As of November 3, 2008 no lawsuit had been filed by any entity against the Plaintiff regarding the debt.

38. On or about November 10, 2008, Plaintiff mailed a request for validation of the debt to Defendant Firstsource.

39. On November 13, 2008, Defendant Firstsource received the Plaintiff's written request for validation of the debt.

7

40. As of April 17, 2009, no lawsuit has been filed by any entity against the plaintiff regarding the debt.

41. As of April 17, 2009, no garnishment action has been filed to collect the debt.

42. As of April 17, 2009, no lien has been filed against the Plaintiff's property for collection of the debt.

43. At all times pertinent hereto, Defendant Firstsource was acting by and through its agents, servants, and/or employees, who were acting within the scope and course of their employment, under the direct supervision and control of Firstsource.

44. The Defendant knew or should have known that its actions violated the FDCPA.

45. Plaintiff has suffered actual damages as a result of these illegal collection communications in the form of anger, anxiety, emotional distress, and frustration, amongst other negative emotions.

## VI. CAUSES OF ACTION

46. Defendant Firstsource violated the FDCPA, 15 U.S.C. § 1692, *et seq*.

47. Defendant Firstsource violated the FDCPA by using false, deceptive and/or misleading representations or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e.

48. Defendant Firstsource violated the FDCPA by falsely representing the status of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

49. Defendant Firstsource violated the FDCPA by falsely representing that nonpayment of the debt would result in garnishment and/or lien when such action was not intended to be taken, in violation of 15 U.S.C. § 1692e(4).

50. Defendant Firstsource violated the FDCPA by threatening to take action that was not intended to be taken, in violation of 15 U.S.C. § 1692e(5).

51. Defendant Firstsource violated the FDCPA by using false representations and/or deceptive means to collect on a debt, in violation of 15 U.S.C. § 1692e(10).

52. Defendant Firstsource violated the FDCPA by misrepresenting the Plaintiff's right to request validation of the debt, in violation of 15 U.S.C. § 1692g.

53. As a result of the foregoing violations of the FDCPA, Defendant Firstsource is liable to Plaintiff for actual damages, statutory damages, and attorney fees and costs in accordance with 15 U.S.C. § 1692k.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cristian Mejia prays that judgment be entered against Defendant Firstsource Advantage, LLC for the following:

A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1) in an amount to be determined at trial;

B. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00;

C. Attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a); and

D. Such other and further relief that the Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff demands a Trial by Jury on all Issues.

Dated: April 20, 2009.

Respectfully submitted,

LAW OFFICE OF LISA D. WRIGHT, LLC

By: _____
Lisa D. Wright
Attorney for Plaintiff
Georgia State Bar No. 268781

235 Peachtree Street, NE
Suite 888
Atlanta, Georgia 30303
404-588-1181 (Office)
404-588-1182 (Fax)
attorneywright@prodigy.net